## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**TAYLOR BELL and DORA BELL,**
**individually and as mother of Taylor Bell**                                                            **Plaintiffs**

**v.**                                                                  **CIVIL ACTION NO. 1:11CV56-D-D**

**ITAWAMBA COUNTY SCHOOL BOARD,**
**TERESA McNEECE, Superintendent of Education for Itawamba County,**
**Individually and in her official capacity**
**TRAE WIYGUL, principal of Itawamba Agricultural High School**
**Individually and in his official capacity,**                                    **Defendants**

## MEMORANDUM IN SUPPORT OF PLAINTIFFS OPPOSITION TO [DOC. 28] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. ARGUMENT

    A. <u>The Defendants have not presented sufficient evidence that Taylor's song could have disrupted the work and discipline of the school.</u>

The Defendants concede Taylor's song was not on-campus speech.[1] Instead, they argue that schools are allowed to regulate off-campus speech under the same standard as on-campus speech, ignoring the distinction the Supreme Court has consistently recognized.[2] Nevertheless, even applying the on-campus standard, the Defendants have not established a reasonable belief that Taylor's song was or could have been disruptive.

---

[1] Plaintiffs stand behind the arguments in their [DOC. 31] Memorandum in Support of Motion for Summary Judgment as to why <u>Tinker</u> standard does not apply to Taylor's song.
[2] <u>Tinker v. Des Moines Indep. Cmty. Sch. Dist.</u>, 393 U.S. 503, 506 (1969)(holding that "in light of the **special characteristics of the school environment**" school officials can regulate student speech made at or during school hours when they can demonstrate that such speech would "substantially interfere with the work of the school or impinge upon the rights of other students")(emphasis added); <u>Bethel Sch. District. No. 403 v. Fraser</u>, 478 U.S. at 688 n.1 (Brennan, J., concurring in Judgment)(stating that the Court's school-speech cases "obviously do not [apply] outside of the school environment"); <u>Morse v. Fredericks</u>, 551 U.S. 393, 410 (2007)(stating that "[h]ad Fraser delivered the same speech in a public forum **outside the school context**, he would have been protected")(emphasis added).

The Court held in <u>Tinker</u> that "to justify prohibition of a particular expression of opinion," school officials must establish that "the forbidden conduct would materially and substantially interfere with the requirement of appropriate discipline in the operation of the school."[3] This burden cannot be met if school officials are driven by "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."[4] <u>Tinker</u> requires "a specific and significant fear of disruption, not just some remote apprehension of disturbance."[5] Courts have held that "a school is better positioned if it can point to a well founded expectation of disruption, especially one based on past incidents arising out of similar speech."[6] It is a "bedrock principle" of the First Amendment that "expression may not be prohibited simply because society finds the idea offensive or disagreeable."[7]

The defendants argue the testimony of Coach Rainey and Wildmon is evidence of a substantial disruption. This argument should be rejected. None of this testimony was in the record prior to Taylor's suspension. This is an important difference from <u>Wisniewski v. Board of Educ. Weedsport Cent. Sch. Dist.</u>, where the Superintendent specifically based her decision to suspend the student on the grounds that the speech created "a disruption in the school environment."[8] Prior to the preliminary hearing, Itawamba never claimed its discipline of Taylor was based on the potential for his song to cause disruption. Neither Coach Rainey nor Wildmon testified at the committee or school board hearing. No other school official put any evidence of a disruption in the record at the hearings. Therefore, the school board and disciplinary committee

---

[3] <u>Tinker</u>, at 509.
[4] <u>Id.</u>
[5] <u>Saxe v. State Coll. Area Sch. Dist.</u>, 240 F.3d 200, 211 (3rd Cir. 2001).
[6] <u>Id.</u> at 212.
[7] <u>Id.</u>
[8] 494 F.3d 34, 37 (2nd Cir. 2007).

could not have based their disciplinary action on the potential for Taylor's song to cause a disruption, and it cannot presently be used to justify Itawamba's discipline of Taylor.

Even if the Court were to consider the belated testimony, it constitutes a *de minimis* showing of disruption. Coach Rainey says he does not feel like he can get physically close to or "put his hands on" students anymore.[9] Coach Rainey also believes students might be gathering in the gym more because of the song, but provided no factual support for this belief. Coach Wildmon testified that he does not touch students and is careful about how he behaves and looks at them.[10] Coach Wildmon also took Taylor's warning that someone might respond violently to teachers "messing" with female students literally, and claimed this scared him.[11] While this testimony demonstrates the coaches have become more careful with students, it does not establish a disruption to the maintenance and order of the school. No Court has held such.

Indeed, Courts have protected speech that caused significant more disruption. In J.S. v. Blue Mountain Sch. Dist., a student created a MySpace profile making fun of her high school principal with vulgar and sexually explicit language.[12] Because of the profile, two classes were disrupted; one teacher had to raise his voice to tell students to stop talking about the profile during class and another had several students tell her about it during class.[13] The school's guidance counselor had to cancel appointments with students to address concerns about the Profile.[14] Yet, under these facts, the Third Circuit held the school could have not have reasonably

---

[9] See Ex. 1 from Plaintiffs [DOC.31] Motion for Summary Judgment Preliminary Hearing, Pages 140-41, Lines 1-24.
[10] Id. at 147, 6-10; 148, 7-11.
[11] Id. at 148, 21-25; 149, 1.
[12] --- F.3d ---, 2011 WL 2305973 at *1 (3rd Cir. June 13, 2011).
[13] Id. at *3.
[14] Id. at *4.

predicted a substantial disruption of material interference.[15] In comparison, Taylor's song did not disrupt any class or cause a school official to miss any appointment.

In Layshock v. Hermitage Sch. Dist., a student made a parody profile of his school's principal.[16] Doing so, he copied a picture of the principal from the school's website, accessed the profile from a school computer and showed it to students during school.[17] Other students also viewed the profile from the school.[18] A teacher witnessed several students looking and laughing at the profile on a school computer and had to tell them to "shut it down."[19] With these facts, the Third Circuit held that there was not enough of a nexus between the profile and a disruption in the school to allow the school to punish the student for it.[20] Here, Taylor's song only reached the school on one occasion, and that was at the behest of coach Wildmon and against school rules.

The alleged acts of disruption presented by the Defendants are similar to the ones offered in J.C. v. Beverly Hills Unified Sch. Dist. There, a student made a YouTube video making fun of another student.[21] When the student learned of the video, she and her parent went to the school the next day to inform the school officials.[22] Because of the video, the student had to receive counseling and briefly refused to attend class.[23] However, the Court held that this was not enough to be considered a substantial disruption. Although the video undoubtedly hurt the student's feelings, it did not cause "any type of school disruption."[24] The Court also noted there was no evidence the video had an effect on the operation of the school; "no widespread whispering campaign was sparked by the video; no students were found gossiping about [the

---

[15] Id. at *11.
[16] --- F.3d ---, 2011 WL 2305970 (3rd Cir. June 13, 2011)
[17] Id. at *2.
[18] Id.
[19] Id.
[20] Id. at *7.
[21] 711 F. Supp. 2d 1094, 1098 (N.D. Cal. May 6, 2010).
[22] Id.
[23] Id.
[24] Id. at 1117.

student] or about the video while in class."[25] As such, the Court concluded the video did not have the potential to cause a substantial disruption and could not be regulated under the First Amendment.[26]

Similar to the student in J.C., Taylor's song may have bothered the coaches, but it did not cause a disruption at the school. There were no verbal or physical confrontations over the song. There was no widespread whispering or gossiping about the song. In fact, students did not have access to the song at school since Facebook is blocked and cell phones are not allowed.

Considering the evidence in the light most favorable to the Defendants, and even considering evidence not presented to the disciplinary committee or school board, the record does not contain evidence that Taylor's song caused a disruption or reason to expect the song would cause such. Defendants have not explained why their discipline was based on more than "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."[27] As a result, Taylor in entitled to judgment as a matter of law.

B. The record does not support a finding that Taylor's song threatened school officials.

The Defendants erroneously argue that Taylor's song can be regulated because he threatened school officials in it. To support this, Defendants cite Boim v. Fulton County Sch. District.[28] However, in Boim the student brought the speech - a narrative story - to the school, showed it to another student, and the teacher found the story in the student's book bag at school.[29] The Court in Boim specifically stated that this permitted the school to regulate the

---

[25] Id. at 1118.
[26] Id. at 1122, 1124 (finding a violation of the First Amendment but granting the officials qualified immunity).
[27] Tinker, at 509.
[28] 494 F.3d 978 (11th Cir. 2007).
[29] Boim, 494 F.3d at 980.

speech.[30] The Court also said the story would have been protected had it not been brought to the school.[31] Again, Taylor never brought his speech to school.

Boim also illustrates why Taylor's song cannot be considered a threat. In Boim, the student's story contained direct and specific threats. The student described a detailed account of her personally killing a teacher, including details about the nerves she would feel taking the gun to the class and how she would execute the killing.[32] Taylor's song, on the other hand, cannot be reasonably viewed to contain such a threat. Defendants continuously refer to two lyrics from Taylor's song as threats. In one, he says, "looking down girls' shirts / drool running down your mouth / messing with wrong one / going to get a pistol down your mouth." In the other, he says to his audience, "middle fingers up if you can't stand that nigga / middle fingers up if you want to cap that nigga."

While these lyrics are vulgar, they cannot be interpreted as a threat that Taylor would harm the coaches. Taylor did not specifically describe killing a teacher or suggest that anyone else *should* harm one. At worst, if the lyrics are taken literally, he is suggesting that people might retaliate against the coaches because of their behavior towards students, and requesting listeners to express their dislike of the coaches by raising their middle fingers, a common gesture to express displeasure with a person.

However, when viewed in the context of the genre of music, the lyrics should not even be taken literally. Like all genres of music, rap contains use of literary devices, like metaphors, similes, and hyperbole. Rap music often has references to guns and violence for entertainment

---

[30] Id. at 984 (stating that "there also is no First Amendment right allowing a student to knowingly make comments, whether oral or written, that reasonably could be perceived as a threat of school violence, whether general or specific, while on school property during the school day").

[31] Id. (stating that "we admit that in many places and in ordinary times [Rachel] in saying all that was said ... would have been within [her] constitutional rights (quoting Justice Holmes in Schenck v. United States, 249 U.S. 47, 52 (1919)).

[32] Id. at 980-81.

6

and shock value.[33] The music is not literal and would not be taken literal by most listeners.[34] In fact, Coach Rainey admitted as much when he said he did not listen to the song because he considered it "just rap."[35]

Latour v. Riverside Beaver Sch. Dist., illustrates this point.[36] There, a student made four rap songs mentioning another student and the school expelled him.[37] The school argued the songs were a "true threat" and had the potential to cause a substantial disruption.[38] Yet, the Court found that "while some rap songs contain violent language, it is violent imagery and no actual violence is intended."[39] Based on this, the Court granted the student a preliminary injunction and overturned the expulsion.[40]

Defendants argue that Taylor's song must be analyzed in the context of the "post Columbine" environment. They suggest this gives schools more authority to respond to speech that threatens violence against school officials. But, the facts simply do not support a finding that Itawamba acted out of fear of violence. First, Taylor had no history of violence. Second, after hearing the song, school officials did not conduct an investigation to determine the risk of violence from Taylor. They did not search Taylor's locker or book bag to determine whether he possessed weapons. They did not notify law enforcement of the song. They did not temporarily remove Coach Wildmon or Rainey from school. Instead, Principal Wiygul, after hearing the song, gave Taylor a ride home.[41] And, the next week, the school allowed Taylor to attend one period of class before removing him and then let him remain at the school until the end of the

---

[33] See Ex.1 from Plaintiffs [DOC.31] Motion for Summary Judgment, Preliminary Hearing pg. 30, lns. 22-25.
[34] Id. at 31, 9-16.
[35] Id. at 139, 16-24.
[36] available at 2005 WL 2106562 (W.D. Pa. 2005)
[37] Id. at 1.
[38] Id.
[39] Id. at *2.
[40] Id. at *3.
[41] See Ex. 1 Preliminary Hearing, Page 105, lines 24-25.

school day.[42] This is certainly not the behavior of school officials concerned that Taylor might be a threat.[43]

Defendants attempt to classify Taylor's lyrics as a threat is simply not well founded. The lyrics cannot be reasonably interpreted as threats, especially when viewed within its genre of music and compared to the other cases on violent student speech. The merit of this argument is further reduced by Defendants failure to conduct an investigation after hearing the song or contacting local law enforcement. Rather, Itawamba's reaction to the song demonstrated a desire to avoid the unpleasantness of the allegations made in it and to suppress this viewpoint. Schools have never been able to regulate speech for these reasons. Consequently, Itawamba has not produced a legitimate reason for its regulation of Taylor's speech and his claims are entitled to summary judgment.

C. Taylor's speech addresses a matter of public concern and deserves heightened protection.

Defendants admit Taylor's song addressed matters of public concern. But the defendants suggest the song should not receive heightened protection because it allegedly contains threats. As previously explained, Taylor's song does not contain a threat, and Defendants did not react to the song as such. As a matter of fact, the Defendants' reaction to the song demonstrates why speech on matters of public concern, specifically in the school setting, should receive heightened protection.

Defendants have continuously focused on the vague references to violence in the song and ignored the allegations of misconduct. The Supreme Court grants speech on matters of public concern heightened protection for situations such as this. Officials in public bodies may

---

[42] Id. at 107, 3-5; Exhibit 2 from Plaintiffs [DOC.31] Motion for Summary Judgment, Recording of Disciplinary Committee hearing on January 16th, 2011
[43] See Latour, available at 2005 WL 2106562 *2(stating that a school's failure to conduct an investigation on whether the student was a threat weakened their argument that they acted out of a fear of violence).

8

ignore misconduct out of a desire to protect the reputation of the institution. On occasion, the wrongdoers may be supervisors of the public body. Therefore, the Supreme Court recognized that members of a public body must be able to expose wrongdoing without fear of reprisal.[44] Students are in a similar position to teachers to expose wrongdoing at schools. Without constitutional protection, students will not do so out of concern that the school may punish them for it. As a result, students should receive the same constitutional rights to speak on matters of public concern under Pickering as adults.

Defendants also incorrectly claim Taylor did not develop this theory until the preliminary hearing on March 10, 2011. The record directly contradicts this. Taylor produced letters from female students confirming the statements in the song at his disciplinary committee.[45] The school attorney, unfortunately, refused any further testimony on the allegations in the statements.[46] Additionally, this argument is irrelevant. Defendants point to no precedent that says plaintiffs must establish their speech is a matter of public concern prior to bringing a civil action.

The Court should find that Taylor's song is speech on a matter of public concern and deserves heightened protection. The Court should apply the Pickering balancing test and hold that Taylor's right to speak about allegations of inappropriate behavior of teachers outweighs the school's ability to silence this speech.

D. Itawamba's discipline of Taylor was a violation of the First Amendment and therefore he is entitled to nominal damages.

Defendants argue that a seven day suspension and placement in alternative school could not violate Taylor's constitutional rights. This argument is without merit. Taylor's claim does not rest on a due process violation. Taylor challenges the ability of the school to punish him because

---

[44] Pickering v. Bd. of Ed. of Twp. High. Sch. Dist. 205, 391 U.S. 563, 571 (1968).
[45] See Ex. 2 from Plaintiffs [DOC.31] Motion for Summary Judgment, Recording of Disciplinary Committee hearing on January 16th, 2011, starting at 14:10 minutes into the recording and ending at 14:20.
[46] Id.

of a song he made away from the school. Regardless of the form of the punishment – whether it was a suspension, a notation in his permanent record, or a school transfer – the punishment violated Taylor's First Amendment rights. The Fifth Circuit squarely addressed this question in Ponce v. Socorro Independent Sch. Dist., and ruled that a student has standing to challenge alleged violations of the First Amendment.[47]

Defendants also assert that Taylor has no damages as a matter of law. Yet, the Supreme Court and the Fifth Circuit have consistently recognized that a constitutional violation entitles a plaintiff to nominal damages.[48] Taylor only seeks nominal damages; therefore, he is entitled to damages as a matter of law upon the finding of a constitutional violation.

E. Defendants are not entitled to qualified immunity for their violations of Taylor's First Amendment rights.

Defendants seek qualified immunity for Defendants McNeece and Wiygul. The Defendants argue that it is not clearly established that schools cannot regulate off-campus student speech, and so the school officials are entitled to qualified immunity should the Court find a constitutional violation. The Court, however, should deny qualified immunity because the Fifth Circuit recently put school officials on notice that the First Amendment does not permit regulation of off-campus speech.

The Defendants point to the Fifth Circuit's grant of qualified immunity to school officials in Porter as support for a grant of immunity here. Yet, the inverse should be interpreted from the 5th Circuit's ruling in Porter. Officials are not protected by qualified immunity if, in light of the preexisting law, it was apparent that the conduct when undertaken, constituted a violation of the

---

[47] 508 F.3d 765, 768 (5th Cir. 2007).
[48] See e.g., Carey v. Piphus, 435 U.S. 247, 266 (1978)(holding that a violation of constitutional rights without proof of actual injury entitles defendant to "recover nominal damages not to exceed one dollar"); Fyfe v. Curlee, 902 F.2d 401 (5th Cir. 1990)(awarding nominal damages of $1.00 for a constitutional violation).

right at issue.[49] With <u>Porter</u>, the Fifth Circuit put schools on notice that off-campus student speech could not be regulated, even if the school disapproved of it. In the Fifth Circuit the case law was no longer unsettled, as with other Circuits, on the parameters of <u>Tinker</u>. School officials could no longer reasonably argue that they did not know the First Amendment does not permit regulation of student speech away from the school. As a result, Defendants McNeece and Wiygul are not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant the plaintiffs' motion for summary judgment against the defendants on the claims that Itawamba's discipline of Taylor violated his First Amendment rights to Free Speech, Taylor's Fourteenth Amendment rights to procedural due process, and Ms. Bell's Fourteenth Amendment rights to raise her son. The Court should expunge from Mr. Bell's school records all references to the incident in question; enjoin defendants from enforcing the school disciplinary code against students for expression that takes place outside of the school or school-sponsored activities and are constitutionally protected; award damages of $1 in favor of the plaintiff and against the defendants; and award Plaintiffs' costs and attorney's fees pursuant to 42 U.S.C. §1988.

Respectfully submitted,

/s/ Scott W. Colom
Scott W.Colom (MS Bar #103168)
The Colom Law Firm, LLC
200 6th Street N., Suite 505
P.O. Box 866
Columbus, MS 39703
Telephone: (662) 327-0903
Fax: (662) 329-4832
Email: colomsw@gmail.com

---

[49] <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

11

## CERTIFICATE OF SERVICE

I, Scott Colom, hereby certify that I have this day electronically filed the foregoing *Memorandum in Support of Plaintiffs' Opposition to [Doc. 17] Defendants' Motion for Summary Judgment* with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This 15th day of August, 2011.

/s/ Scott W. Colom
Scott W.Colom